## ADAMS vs. GARRETT AND GARRETT.

1. A complainant cannot set up one contract in his bill, and recover upon proof of a different one.

ERROR to the Chancery Court of Cherokee.
Heard before the Hon. DAVID G. LIGON.

L. E. PARSONS and JOHN WHITE, for plaintiff in error.
J. B. MARTIN, contra.

CHILTON, C. J.—This was a bill in chancery by Adams, who is the plaintiff in error, filed in the Chancery Court of Cherokee county, against Wm. H. and Mary Garrett. Complainant alleges, that on the 1st February, 1841, he applied to W. H. Garrett to borrow some money; that said Garrett then, loaned him the sum of $150, to secure the repayment of which, with interest, he delivered to Garrett a negro man slave, named Perry, to be controlled by and to serve him at the rate of $100 per annum; that on the 25th June, 1841, he obtained a further loan from Garrett of $230, which was made in notes of the United States Bank, and which, at that time, were passing at a discount of about fifty per cent.; that he was induced to take said notes upon the false and fraudulent assurance of Garrett, that the notes were at par and equal to gold and silver, and thereupon executed to Garrett a bill of sale of said boy, signed by complainant, James, Frances J. and Alexander S. Adams, conditioned that if either of said parties should pay Garrett, at any time thereafter, $380, he should return them the said slave, and on his failure to do so, he should pay them for him the sum of $1200; that in this last arrangement, it was distinctly agreed that the negro was to remain in the employment of Garrett, who was to allow one hundred dollars per annum hire for him; that learning that the United States Bank notes were greatly below par, he demanded of Garrett to take them back, which he refused; that he then offered to refund the money and cancel the contract, which was also declined; and despairing of doing any thing with Garrett in relation thereto, he used said notes at a discount of fifty per cent., obtaining for them all that they were worth; that on the 12th June, 1844, believing that Garrett was fully paid on a fair settlement, he went to him, demanded a settlement and a return of said slave, or that Garrett pay him $1,200; but his demand was refused, and he was informed by Garrett that on the 24th Nov., 1843, the interest which he claimed in the slave had been assigned and transferred to Mrs. Mary Garrett, and that the whole sum was due. Complainant made a similar demand of Mrs. Garrett, who likewise refused, insisting that the $380, with the interest thereon, should first be paid.

The bill prays an account of the debt and interest, and of

the hire of the slave, and proposes, should any thing be due to defendants, to pay it, and to redeem the slave.

The answers of the defendants deny that there was any agreement to pay $100 hire per year for the negro Perry, but set up an entirely different contract, namely: that said William Garrett was to retain the negro boy Perry until the $380 was paid him, and for his annual hire was to discount the interest and pay to the complainant twenty dollars, which would amount to $50$\frac{40}{100}$. They deny the charges as to any false or fraudulent representations concerning the United States Bank notes; aver that they were current at the time of the transaction in Cherokee county at par, and that the complainant passed them at par, thus obtaining for them a value equal to what he alleges they were represented to possess; admit that complainant demanded a settlement, but upon the terms and basis stated in his bill; that they refused to settle, and proposed to settle according to the contract stated in their answer, which he in turn declined; admit the hire of the slave to be worth $70 per year; concede the execution of the bill of sale, and the assignment of it to Mary Garrett, who now holds it, together with the negro, which she proposes to surrender when the $380, less the amount to be annually deducted by way of hire above the interest, shall be paid.

After the coming in of the answers, complainant, by leave of the court, filed an amendment to his original bill, charging, among other things, that he was mistaken in his original bill in charging the loan to have been made by William H. Garrett; that it was in fact made by John H. Garrett, and the bill of sale taken in William's name to defraud John's creditors; that complainant agreed to pay twenty per centum per annum upon the said sum so borrowed, which agreement, he insists, was usurious, and that defendants should thereby forfeit all interest; and prays that the hire of the slave may be ascertained and decreed as a satisfaction of the principal debt, &c.

The defendants repeat the contract set up in their previous answer, in response to the amendment, insisting also that the money was loaned by William.

The Chancellor, upon the final hearing on bill, answers, exhibits and proof, dismissed the bill.

Several witnesses were examined in reference to the value of the hire of the slave Perry, who generally agree in assessing his average annual hire at about $80.

As to the terms of the contract between the parties there is the following proof: Thomas Garrett, a witness for complainant, states that he was present at an interview between the complainant and the defendant, Mary; that complainant desired to have a settlement with her, and was answered, that she was willing to settle with him according to contract. He inquired what was the contract; she replied that complainant was to give twenty per cent. on the money loaned, and she was to give $100 per annum for the hire of the boy; thereupon complainant said he was willing to pay lawful interest, and tendered her one hundred and fifteen dollars, stating that according to his (complainant's) calculation, there was only $111 due; that the reason assigned by Adams for refusing to pay the twenty per cent. was, that he had taken depreciated bills, which J. H. Garrett had refused to take back, and he had consequently lost by it. At the same time this witness proceeds to state that Mary Garrett told complainant she owed him for two year's hire at $20 per year, and tendered him forty dollars, stating that she had previously paid him $20 for the first year's hire. The complainant admitted that he had received $20 from William H. Garrett, but denied that it was on account of the hire.

James J. Adams testifies that the contract was as follows: W. H. Garrett let complainant have $380, to secure which complainant delivered to him the negro man Perry, and executed the bill of sale set out in the pleadings; that Garrett was to allow complainant an annual hire of $100 for said slave, and was to have $20 per $100 annually as interest on the loan; that this contract was made between the witness, as agent for complainant, and John H. Garrett, acting as agent for William H., but was ratified between the parties.

The proof is ample to show that Adams used the United States Bank bills at par, in paying off an execution against him; and as to the terms of the contract, the defendants proved by Lewis H. Covington, that he was present at the interview deposed to by Thomas Garrett, and that the amount tendered by complainant was $111; that complainant asked William

H. what the contract was, who replied, that he, William, was to have the negro for the interest on the $380, and $20 to be annually paid by the defendant to him; complainant replied, that such was the contract, but insisted he should not be bound by it, in as much as said William H. Garrett had not paid him as much money as he had promised. This witness also testifies, that Mrs. Garrett then tendered to complainant forty dollars for the two years, hire of the slave, which was refused by complainant. This is all the proof.

We fully concur in the opinion of the Chancellor, that the proof in this case fails to establish the contract set up in the bill, and which the answers positively deny. The case of the complainant is made to rest upon the testimony of one witness, James J. Adams, who made the contract with John H. Garrett, and which he says was ratified by William H.; but we can readily perceive how he may mistake the extent of the ratification between the parties themselves, as to that portion of the agreement which was not embraced in the writing. The testimony of this witness is corroborated by Thomas Garrett; but we think the evidence of this latter witness is neutralized by that of Covington, who was present at the same interview, and who explicitly states that the contract, as set forth in the answers, and not that stated in the bill, was admitted by the complainant. Covington's testimony is strongly corroborated by the circumstances deposed to both by himself and Garrett; for, in the first place, it would be highly probable that, in a controversy between the complainant and Mrs. Garrett, as to what the contract really was, the complainant should have appealed to William H. Garrett, with whom the contract was made, and not to the lady, who could have known nothing about it, save as she was informed by the parties, or some third person, not having been present when it was entered into. But there is another, and a much stronger reason for holding that Covington states the conversation correctly, and that Thomas Garrett has mistaken it, which is this: The testimony of the latter places Mrs. Garrett in the position of insisting upon one contract, and proposing a settlement in accordance with it, and yet as tendering a compliance with a different one. If she admitted, as Thomas Garrett remembers it, that complainant was to have $100

hire per annum, and she twenty per cent. per annum interest on the loan, why does she immediately follow this admission with a tender of $20 per year as the hire for the slave? Why say that the first year's hire was paid by $20, and that the $40 then tendered by her was in full for the two remaining years? It is clear that her acts and declarations, as proved by this witness, were utterly at war with each other; whereas, her acts are perfectly consistent with her declarations as detailed by Covington.

The case, therefore, is not made out, giving full credence to the testimony of Adams, as his evidence cannot overrule the answers. And as the rule forbids that a complainant should set up one contract in his bill, and recover upon a different one, his bill was rightfully dismissed. 20 Ala. 754.

The view which we have taken of the case renders it unnecessary that we examine the other question argued at the bar.

Let the decree be affirmed.